### IN THE UNITED STATES DISTRICT COURT FOR
### THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SENECA RESOURCES CORPORATION,   )<br>                                                                    )<br>                     Plaintiff,                    )     Case No. <u>1:15-cv-0060-SPB</u><br>                                                                    )<br>         v.                                                   )<br>                                                                    )     **DEFENDANTS' MEMORANDUM**<br>                                                                    )     **IN SUPPORT OF MOTION TO**<br>HIGHLAND TOWNSHIP, ELK COUNTY,   )     **DISMISS AMENDED COMPLAINT**<br>PENNSYLVANIA AND THE HIGHLAND   )     **FOR LACK OF STANDING**<br>TOWNSHIP BOARD OF SUPERVISORS,   )<br>ELK COUNTY, PENNSYLVANIA,                 )<br>                                                                    )<br>                     Defendants.                 )<br>                                                                    )<br>_____ )     *Filed Electronically* | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### AMENDED COMPLAINT

*For Defendants*
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund
P.O. Box 360
Mercersburg, Pennsylvania 17236
(717) 498-0054 (v)
(717) 977-6823 (c)
tal@pa.net

1

Defendants HIGHLAND TOWNSHIP, ELK COUNTY, PENNSYLVANIA and the HIGHLAND TOWNSHIP BOARD OF SUPERVISORS, ELK COUNTY, PENNSYLVANIA (hereinafter "Highland Township") submit the following Memorandum of Law in Support of Defendants' Motion to Dismiss filed concurrently herewith.

## I.   INTRODUCTION

On March 24, 2015, the people of Highland Township, through their municipal elected officials, adopted an Amended and Revised Community Bill of Rights Ordinance [Doc. 21, Amended Compl., Exh. A, "Amendment and Revision of Ordinance No. 1-9 of 2013, Highland Township, Elk County, Pennsylvania, Community Bill of Rights Ordinance, hereinafter "Ordinance"]. The Ordinance declares it "unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction." [Ordinance at §3]. Seneca Resources Corporation's ("Seneca") Amended Verified Complaint attempts to challenge the Ordinance's constitutionality and legality, but Seneca does not have standing to do so.[1] Accordingly, this Court does not have jurisdiction over this action and Seneca's Amended Complaint must be dismissed.

## II.   SUMMARY OF THE ARGUMENT

Seneca does not have standing. Seneca's Amended Complaint impermissibly attempts to prosecute a generalized grievance about the Ordinance. Seneca complains that the Ordinance "illegally purports to ban otherwise properly permitted and regulated underground injection

---

[1]The Ordinance is a valid local law enacted by the people of Highland Township, through their municipal corporation, pursuant to their right of local, community self-government. The assertion of that right of local, community self-government defeats the claims brought by Seneca.

control ("UIC") wells used for the disposal of natural gas brines within the Township." [Amend. Compl. ¶1 (footnote omitted)]. Seneca, however, is not operating a properly permitted UIC well.

As Seneca acknowledges, Pennsylvania requires a well permit from the Pennsylvania Department of Environmental Protection ("DEP") for a disposal injection well. [Amend. Compl. ¶16]. Seneca cannot operate the well as a disposal injection well without the DEP permit. Seneca alleges that its DEP permit application is pending. [Amend. Compl. ¶¶33-36, 49]. According to the DEP website, Seneca's permit application (permit number 047-23835) for Well No. 38268 is still undergoing technical review. [*See* Authorization Search Details for Permit Number 047-23835 for Seneca Resources Corp., Well No. 38268, available at www.ahs.dep.pa.gov/eFACTSWeb/searchResults_singleAuth.aspx?AuthID=1051705].[2]

Seneca also fails to allege that it has satisfied the mechanical integrity test prerequisite set forth in the EPA permit in order to operate the injection well. Under the EPA permit, Seneca cannot commence injection operations until it has demonstrated mechanical integrity, and thus, Seneca's federal permit is not currently valid. [Amend. Compl., Exh. D, Doc. 20-5, at p. 12].

As a result, even absent the Ordinance, Seneca does not have the right to construct, convert, or operate a frack injection well. Seneca's Amended Complaint is predicated on the violation of a right that it does not have. Seneca is not suffering an injury in fact as a result of the Ordinance. The Court cannot redress Seneca's alleged harm in this action because even if it were to find the Ordinance invalid, Seneca could not construct and operate its proposed well without the DEP permit.

---

[2]Highland Township requests that this Court take judicial notice of the permit report for Permit Number 047-23835, available on DEP's website as a public record "whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); *see Starks v. Coloplast Corp.*, 2014 WL 617130, at *1 (E.D. Pa. Feb. 14, 2014) ("courts take judicial notice of documents that are matters of public record such as Securities and Exchange Commission filings, court-filed documents, and FDA reports published on the FDA website").

### III.     FACTUAL AND PROCEDURAL HISTORY

Highland Township is a small, rural community of less than five hundred residents. Seneca operates natural gas wells within the Township. Seneca is seeking to convert a natural gas well, Well No. 38268, to an injection well – thus enabling it to inject waste fluids and brine produced by fracking and other oil and gas extraction activities. [Amend. Compl. ¶¶ 17-20].

### A.     EPA Permit

On June 17, 2014, Seneca obtained one required permit, UIC Permit No. PAS2D025BELK, from the Environmental Protection Agency ("EPA"). [Doc. 21-5, Amend. Compl., Exh. D]. The June 17, 2014 EPA permit does not grant Seneca the unfettered right to begin use of the underground injection well for the disposal of fracking waste. In particular, the EPA permit "does not convey property rights or mineral rights of any sort or any exclusive privilege; nor does it authorize any injury to persons or property, an invasion of other property rights or any infringement of State or *local law or regulations*." [*Id*. at p. 2 (emphasis added)]. Contrary to Seneca's assertions, the permit is expressly subject to, and does not preempt, local law. [*Id.* at p. 2 "UIC requirements do not supersede local, county, or state law or regulations."].

Seneca's ability to commence injection operations under the EPA permit is also subject to the performance of a satisfactory mechanical integrity test. [*Id*. at p. 12 "Mechanical Integrity. Injection operations are prohibited until the permittee demonstrates that the well covered by this permit has mechanical integrity in accordance with 40 CFR §146.8 and the permittee has received notice from the Director that such a demonstration is satisfactory in accordance with the provisions of Condition D.2. located in Part II of this permit."].[3] Seneca's Amended Complaint

---

[3] Seneca carries the burden here of showing that it possesses a valid federal permit, which includes a showing that all permit conditions, including the mechanical integrity test, have been satisfied. Seneca does not allege that those conditions have been met in its Amended Complaint.

does not allege that Seneca has demonstrated that the well has mechanical integrity. The mechanical integrity test requires, in part, evaluation of whether the well has significant leaks. *See* 40 C.F.R. §146.8. Moreover, because performance of the mechanical integrity test necessitates drilling or alteration of the well, Seneca must obtain the DEP permit before it can demonstrate mechanical integrity. *See* 25 Pa. Code §78.11.

### B. DEP Permit

On November 11, 2014, Seneca applied for the required state permit from the Pennsylvania Department of Environmental Protection ("DEP"). [Amend. Compl. ¶34]. Pennsylvania law requires Seneca to have an approved EPA permit before applying for the DEP permit. [Amend. Compl. ¶34; *see* Pa. Code §78.18(a)(2)]. Seneca alleges that, on January 8, 2015, DEP sought additional information and material from it relating to proposed surface activities and Seneca responded a few days later. [Amend. Compl. ¶35]. As DEP's website shows, however, Seneca's permit application is still undergoing technical review. As Seneca acknowledges, it cannot legally operate its well as an underground injection well for the disposal of fracking waste without first obtaining the DEP permit. [Amended Compl. ¶16]; *see* 25 Pa. Code §78.18(a).

Section 78.11 of the Pennsylvania code prohibits the drilling or alteration of a well "unless that person has first obtained a permit from the Department." 25 Pa. Code §78.11. Section 78.18 of the Pennsylvania code similarly prohibits a person from drilling a disposal or enhanced recovery well or altering an existing well to be a disposal or enhanced recovery well without a permit. 25 Pa. Code §78.18(a).

The issuance of an EPA permit by no means guarantees the issuance of a DEP permit. The DEP has the authority to conduct an extensive review of proposed underground injection

5

wells. On March 12, 2015, the DEP, for instance, revoked an injection well permit previously issued to Pennsylvania General Energy, LLC, to analyze the potential impact of the injection well on groundwater and surfacewater. *See PGE v. Grant Township*, Civ. No. 1:14-cv-209 (WD PA) (Grant's *Motion to Dismiss* Exhibit #1, at Docket 80-2 (DEP Letter of Revocation to PGE, dated March 12, 2015)). Given the expansion of DEP's oversight over the injection well in Grant Township, it is likely that similar oversight is being given to Seneca's permit application. DEP may either deny Seneca's application or greatly extend its period of review. Either way, Seneca's lawsuit presents nothing more than a hypothetical injury that may, at some undermined point in the future, occur only *if* DEP grants its permit application.

### C.     Community Bill of Rights Ordinance

The people of Highland Township, and the Highland Township Board of Supervisors, do not want oil and gas waste materials injected into land within their community. They fear that injecting waste materials from oil and gas extraction has the potential to contaminate their water and otherwise adversely affect the health, safety, and welfare of the residents and their community. They believe that the relevant state and federal regulatory agencies are more interested in issuing permits to allow the injection to occur, than in protecting the people and natural environment of Highland Township.[4]

---

[4]The terms of the EPA permit validate this belief. The EPA permit allows a maximum of 45,000 barrels per month of oil and gas waste. The permit is for a ten year period, resulting in a potential 5,400,000 barrels of waste, or *almost 227 million gallons (697 acre-feet) of fracking waste to be injected.* [Doc. 21-5, Amend. Compl., Exh. D at p. 12]. In responding to comments regarding the EPA's issuance of the underground injection well permit, the EPA expressly conceded its inability to regulate toxic and hazardous waste associated with oil and gas production. [Doc. 21-3, Amended Compl., Exh. B at p. 10 ("Individual constituents within the brine produced during an oil or gas production can be toxic, hazardous, or radioactive. However, when produced in association with oil and gas production, are exempt from hazardous waste regulation and are not classified as hazardous. . . .")].

On January 9, 2013, the people of Highland Township, through their municipal elected officials, adopted a Community Bill of Rights Ordinance. [Amend. Compl. ¶37, Exh. F]. That Ordinance established a local bill of rights and then prohibited those activities – like the use of disposal injection wells for fracking waste – that would violate those rights. [Ordinance at §4].

In response to the adoption of the Community Bill of Rights Ordinance by the people and elected officials of Highland Township, Seneca sued the Township on February 18, 2015. [Doc. 1, Compl.]. On March 12, 2015, Seneca filed a motion for preliminary injunctive relief. [Doc. 6]. The Court held a status conference on March 27, 2015 at which Highland opposed Seneca's request for preliminary injunctive relief. The Court stayed Seneca's motion for preliminary injunctive relief.

On March 24, 2015, the people of Highland Township, through their municipal elected officials, adopted an Amended and Revised Community Bill of Rights Ordinance [Doc. 21, Amended Compl., Exh. A, "Amendment and Revision of Ordinance No. 1-9 of 2013, Highland Township, Elk County, Pennsylvania, Community Bill of Rights Ordinance, hereinafter "Ordinance"]. The March 24, 2015 Ordinance similarly declared it "unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction." [Ordinance at §3]. The Ordinance also includes a Community Bill of Rights recognizing the rights of residents to clean air, clean water, and a sustainable energy future. [Ordinance at §2] (codifying the "right to water," the "right to clean air," and the "right to a sustainable energy future").

The Ordinance recognizes that the people of the Township have a federal, state, and locally-secured constitutional right to govern their own community. That right – the right of local, community self-government – includes the right to change their municipal system of

governance if it has been rendered incapable of either protecting their civil and political rights, or of incorporating the authority of a community majority to make governing decisions for the locality. [Ordinance at §2(e) (recognizing and securing the "right to local self-government")].

On April 6, 2015, Seneca filed a nine count Amended Complaint asserting a generalized grievance that the Ordinance "illegally purports to ban otherwise properly permitted and regulated underground injection control ("UIC") wells used for the disposal of natural gas brines within the Township." [Doc. 21, Amend. Compl. ¶1 (footnote omitted)]. Seneca seeks to nullify the Ordinance based on three categories of claims – the first alleges that certain state laws preempt the Ordinance [*Id.* at Counts I-II "preemption claims"], the second alleges that the Township lacked the authority to adopt the Ordinance, [*Id.* at Count III, V, VI "Dillon's Rule claims"], and the third alleges the Ordinance violates corporate constitutional "rights," [*Id.* at Counts IV, VII-IX "corporate rights claims"].

Seneca does not have standing to raise any of these claims.

### IV.     STANDARD OF REVIEW

A.     **Standing**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a complaint if the court lacks subject matter jurisdiction to hear the case. A defendant may challenge the court's subject matter jurisdiction based on the plaintiff's lack of standing. *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001). Absent standing, and by extension subject matter jurisdiction, the court does not possess the power to decide the case, and any disposition it renders is a nullity. *Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines*, 673 F.2d 700, 711 (3d Cir. 1982).

"Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (internal citations omitted); *see also Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) ("The question of standing to sue is a jurisdictional one."). A court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

The standing inquiry "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). There are three requirements for Article III standing: (1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The injury-in-fact element is central to the standing inquiry. *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed.Cir. 2007) ("Of the three standing requirements, injury-in-fact is the most determinative."); *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 704 (D.C.Cir. 1988) (describing the injury-in-fact prong as "the core of standing"); *see also*

Gregory P. Magarian, NOTE, FIGHTING EXCLUSION FROM TELEVISED PRESIDENTIAL DEBATES: MINOR PARTY CANDIDATES' STANDING TO CHALLENGE SPONSORING ORGANIZATIONS' TAX-EXEMPT STATUS, 90 Mich. L.Rev. 838, 844 n. 45 (1992) ("[C]ourts rarely recognize an injury as cognizable and proceed to deny standing on one of the other constitutional grounds."). Under it, the plaintiff must suffer a palpable and distinct harm. *See Allen*, 468 U.S. at 751, 104 S.Ct. 3315. That harm "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1.

Plaintiffs must also demonstrate prudential standing by meeting certain judge-made requirements designed to limit the exercise of federal jurisdiction. Without these additional prudential considerations, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent ... and judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500.

The party invoking federal jurisdiction has the burden to establish standing to sue. *Lujan*, 504 U.S. at 561. Each of the three standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (internal quotation marks omitted). "When ruling on motions to dismiss for lack of standing, federal courts may consider affidavits and other factual materials in the record." *Nat'l Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1251 (11th Cir. 2006), *cert. denied*, 552 U.S. 1165, 128 S.Ct. 1119, 169 L.Ed.2d 948 (2008).

A defendant may challenge a court's subject matter jurisdiction with either a facial or factual attack. *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). In a factual attack, as here, the defendant may challenge the factual basis underlying the court's subject matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true. *Cunningham v. Lenape Regional High Dist. Bd.*, 492 F. Supp. 2d 439, 447 (D.N.J. 2007). Because this Court must be satisfied at all times that it has the power to hear the case, it "may consider evidence outside the pleadings . . . to resolve factual issues bearing on jurisdiction." *Gould Electronics*, 220 F.3d at 176: *Gotha v. U.S.*, 115 F.3d 176, 179 (3d Cir. 1997); *Int'l Ass'n of Machinists*, 673 F.2d at 711. Once the defendant presents extrinsic evidence contesting the jurisdictional facts set forth in the complaint, the court must permit the plaintiff to respond. *Gould Electronics*, 220 F.3d at 177. "The court may then determine jurisdiction by weighing the evidence presented by the parties . . . evaluating for itself the merits of the jurisdictional claims." *Id.*; *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). There is no presumption of truthfulness attached to the allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. Rather, the challenge must be evaluated solely on the merits of the evidence submitted on jurisdiction. *Id.*

## V.    ARGUMENT

**Seneca lacks standing to maintain this claim, and this Court lacks jurisdiction to entertain it, because Seneca has not been injured by Highland's Ordinance and because Seneca's alleged injuries cannot be redressed by this Court through a ruling nullifying the Highland Ordinance.**

Seneca did not have standing at the time it filed its Original Complaint or its Amended Complaint and it does not have standing now. Seneca lacks the cognizable and redressable injury required for standing.

Seneca fails all three prongs of the constitutional standing requirement. First, Seneca lacks any legally protected interest in operating Well No. 38268 as an injection well, much less an interest that is concrete and particularized, or actual or imminent, rather than conjectural or hypothetical. Second, there is no causal connection between Seneca's inability to use Well No. 38268 as an injection well and Highland's Ordinance. At this juncture, it is the lack of a state-issued permit from DEP that is preventing Seneca from using Well No. 38268 as an injection well.[5] Third, Seneca's alleged injury cannot be redressed by a favorable decision of this Court. Even if the Ordinance were invalid – which it is not – Seneca could not proceed to operate Well No. 38268 as an injection well even if the Ordinance was nullified.

It is well established that this Court cannot entertain a challenge to an ordinance when the plaintiff suffers no concrete or particularized harm. In *Warth v. Seldin*, 422 U.S. 490 (1975), the U.S. Supreme Court considered whether low and moderate income residents, and an association of firms engaged in the development and construction of residential housing, had standing to challenge a zoning ordinance as unconstitutionally exclusionary. The Court found that the plaintiffs did not have standing. It reasoned that the residents did not have standing because they did not allege specific, concrete facts demonstrating that the allegedly exclusionary zoning practices harmed them, and that they personally would benefit in a tangible way from the court's intervention. The Court reasoned that the association of firms did not have standing to challenge the zoning ordinance because the association "refer[red] to no specific project of any of its members that [was] precluded ... by the ordinance," and there was "no averment that any member ha[d] applied ... for a building permit or a variance with respect to any current project."

---

[5] It is also, of course, the lack of a valid EPA permit which currently prevents Seneca from creating and operating the injection well; a condition precedent for the validity of the EPA permit is the EPA's certification of Seneca's mechanical integrity test.

*Id*. at 516, 95 S.Ct. 2197. The association's allegation that the ordinance "had deprived some of its members of substantial business opportunities and profits" was insufficient to establish injury-in-fact. *Id*. at 515, 516.

Equally clear is that a plaintiff's alleged harm does not meet the redressability requirement where, as here, another unchallenged law or regulation, independent of the Ordinance, is causing the alleged harm. *See Interstate Outdoor Advertising v. Zoning Bd. of the Tp. of Cherry Hill*, 2011 WL 4073469, at *7 (D.N.J. Sept. 13, 2011) ("Two recent District of New Jersey decisions analyzing constitutional challenges to billboard bans held that a plaintiff is unable to establish the essential requirement of redressability, even if the challenged provision was struck down, if other unchallenged provisions would independently prevent construction of the desired billboards.") (*citing Coastal Outdoor Advert. Gp., LLC v. Twp. of Union*, 676 F. Supp. 2d 337, 349 (D.N.J. 2009) (Wolfson, J.), *aff'd*, 402 F. App'x 690, 691 (3d Cir. Nov. 18, 2010)*; Coastal Outdoor Advert. Gp., LLC v. Twp. of East Hanover*, 630 F. Supp. 2d 446, 454 (D.N.J. 2009) (Hayden, J.), *aff'd*, 397 F. App'x 794, 795 (3d Cir. Nov. 16, 2010)); *Maverick Media Group, Inc. v. Hillsborough County, Fla*., 528 F.3d 817, 821 (11th Cir. 2008) (holding that a sign permit applicant lacks a redressable injury to challenge the constitutionality of a sign ordinance where the permit could have been denied on the basis of some alternative but unchallenged regulation); *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007) ("Any injury KH Outdoor actually suffered from the billboard and offsite sign prohibition is not redressable because the applications failed to meet the requirements of other statutes and regulations not challenged."); *Harp Adver. Ill., Inc. v. Vill. of Chicago Ridge, Ill*., 9 F.3d 1290, 1292 (7th Cir. 1993) (holding that plaintiff advertiser's inability to erect billboard would not be redressed by favorable decision because an unchallenged provision of sign code would otherwise

block construction); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) ("[A] favorable decision for Advantage even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback.").

Seneca is in a similar bind. Without a valid state permit, Seneca is unable to convert and operate the frack injection well which is the subject of this dispute. Seneca's injury is not currently caused by Highland's Ordinance, but is, instead, caused by Seneca's lack of a state permit. Because Seneca's injury is not caused by Highland's Ordinance, its injury is not presently redressable by this Court. At this point, an overturning of the Ordinance would not allow the frack injection well to proceed. The Ordinance cannot legally be considered to be the cause of Seneca's injuries.

In response to these arguments, Seneca attempts to manufacture standing in three ways: (1) by alleging that the Ordinance is somehow preventing it from engaging in "site work" [Amend. Compl. ¶¶50-51]; (2) by suggesting that the Ordinance is holding up DEP's review of its permit application [Amend. Compl. ¶52]; and (3) by alleging that it "is continuing to suffer deprivations of its constitutional rights." [Amend. Compl. ¶54]. Seneca's allegations are insufficient to establish standing. They lack sufficient particularity and are contradicted by the plain language of the Ordinance.

First, Seneca's speculative allegation that it could "be engaged in site work associated with its planned UIC well" even without the DEP permit, does not constitute a concrete, particularized harm. [Amend. Compl. ¶50]. Seneca's Amended Complaint does not allege in

what type of site work it could, or would, be engaged in before obtaining the DEP permit.[6] Significantly, the Ordinance does **not** prohibit Seneca from engaging in site work associated with its planned UIC well. The Ordinance prohibits "the depositing of waste from oil and gas extraction." [Ordinance at §3].[7] Seneca does not, and cannot, allege that it could engage in the conduct prohibited by the Ordinance – the depositing of waste from oil and gas extraction in a disposal well – *before* obtaining the required DEP permit. *See* 25 Pa. Code §78.18(a) (prohibiting the drilling of a disposal or enhanced recovery well or alteration of an existing well without a well permit under Section 78.11).

Second, Seneca has no basis for its allegation that its "well permit application has been extended as a result of the Ordinances and Defendants' contentions that they preclude DEP from issuing the well permit application." [Amend. Compl. ¶52]. Seneca cannot manufacture jurisdiction based on this unsupported and contradicted inference. The mere fact that DEP is aware of the Ordinance does not mean that it is considering its effect in reviewing Seneca's permit application. Seneca's Amended Complaint does not present any factual basis for this conclusory allegation. Seneca alleges only that the Highland Township Supervisors informed DEP of the Ordinance and of their position regarding the Ordinance. [Amend. Compl. ¶36]. It should not be a surprise to DEP, or anyone, that Highland Township has taken a position in favor

---

[6] Seneca alleges that it did not even begin work on the DEP permit application until it obtained the EPA permit. [Amend. Compl. ¶33]. There is no basis for its allegation that it would begin any actual site work without the DEP permit.

[7] On April 8, 2015, the Highland Township Board of Supervisors sent a letter to Seneca Resources Corporation stating that "Highland's Ordinance does not preclude Seneca from doing site work for the proposed injection well. . . [and that the] Township lacks the authority pursuant to the Ordinance to enforce the Ordinance's provisions against site work conducted by Seneca, as long as that site work does not include violating the prohibitions against deposition that are contained within the Ordinance." *See* April 8, 2015 Letter from Highland Township to Seneca Resources, attached as **Exhibit #1**. The Ordinance's plain language, coupled with this letter, renders Seneca's position implausible and disingenuous.

of enforcing the Ordinance. DEP is obligated to conduct a thorough application review and may very well have a host of concerns with issuing Seneca an injection well permit. DEP's website indicates that Seneca's permit application has been undergoing technical review since November 20, 2014 and that on January 8, 2015 DEP issued Seneca a deficiency letter with regard to its application. There is no mention of the Ordinance as a basis for the deficiency letter or the ongoing technical review.[8]

Even if DEP had decided to withhold the permit in light of the Ordinance, such circumstances would not give Seneca standing to challenge the Ordinance. The alleged withholding of the permit does not create a sufficient injury in fact *caused by the Ordinance* that can be redressed by this Court. DEP's reasons for not issuing the permit are irrelevant to this action. A DEP permit is required. Seneca does not have one. It is the lack of a DEP permit, not the Ordinance, that is preventing Seneca from moving forward with its planned frack waste disposal injection well. DEP is not a party to this action and this action is not about DEP's delay in issuing Seneca a permit. If DEP denies Seneca a permit, or fails to issue it one, for whatever reason, including based on the Ordinance, then Seneca may bring a separate action challenging the rationale behind DEP's denial or failure to act. Until such time, Seneca cannot assert a claim, particularly a speculative one, based on DEP's rationale for continuing to conduct a technical review of Seneca's application.

Third, Seneca's allegation that it is "continuing to suffer a deprivation of its constitutional rights" is contradicted by the Ordinance's plain language. Seneca has not suffered any violation of its constitutional "rights" as a result of the Ordinance. The Ordinance's provisions stripping

---

[8]Indeed, Seneca's entire complaint is premised on the contention that the local Ordinance is facially invalid and thus, has no legal effect. In its Complaint, Seneca now seems to argue that the Ordinance could be having an impact on the legal review that DEP is currently conducting. Unfortunately, for Seneca, it cannot have it both ways.

16

corporations of their rights as persons, only apply to corporations that violate the Ordinance, or which seek to violate the Ordinance. Seneca is not currently violating the Ordinance. It cannot plan to violate the Ordinance because it is not permitted to engage in the activities prohibited by it. Despite the Ordinance, Seneca can only engage in injection well activities *if* it obtains a valid permit from the DEP.

Put another way, because Seneca does not have standing to challenge the Ordinance's ban on frack injection wells within Highland Township, it does not have standing to challenge the Ordinance's enforcement provisions enumerated in Section 5. To do so presents a hypothetical, rather than a concrete and particularized injury. [9] Seneca must wait until it has standing to challenge the Ordinance before the corporate constitutional "rights" claimed by it are affected.[10] In addition, the Ordinance, as amended on March 24, 2015, clarified that it does not criminalize any First Amendment activities, a revision from the earlier version of the Ordinance, which specifically enumerated First Amendment corporate "rights." [Ordinance at §5].

For these reasons, Seneca cannot meet its burden of establishing standing, and, as such, its Amended Complaint must be dismissed.

---

[9] Section 5 of the Ordinance is purely about enforcement – the local bill of rights cannot be effective if corporate claims to preemption, Dillon's Rule, and corporate "rights" are held to be valid grounds for overturning the bill of rights. Thus, the people's vote to adopt Section 5 of the Ordinance seeks to make the Ordinance enforceable by elevating the bill of rights over the "rights" claimed by Seneca and other corporations. [Ordinance at §5].

[10] Seneca rests its argument in this respect on the contention that the Ordinance somehow restricts its access to the Court, via constraints on the corporation's First Amendment rights. The purported constraint, however, has not impeded Seneca's access to this Court, or its aggressive litigation against Highland Township. It has thus not affected Seneca at all, and thus, cannot be used as grounds for standing.

## VI. CONCLUSION

Seneca has not, and cannot, suffer an injury in fact from the challenged Ordinance, and therefore, any alleged injury is not redressable by this Court. Accordingly, Seneca does not have standing and its Amended Complaint must be dismissed for lack of jurisdiction.

Respectfully submitted this **21st** Day of **April,** 2015.

*For Defendants:*

*/s Thomas Alan Linzey*
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund
P.O. Box 360
Mercersburg, Pennsylvania 17236
(717) 498-0054 (v)
(717) 977-6823 (c)
tal@pa.net